## Chapman v. Majestic Collieries Company.

(Decided November 19, 1926.)

### Appeal from Pike Circuit Court.

1. Trial.—There should be separation of law and facts in ordinary action.

2. Appeal and Error.—To obtain review of adverse judgment in ordinary action tried to court, plaintiff held required to make motion for new trial.

3. Appeal and Error.—In absence of motion for new trial, in ordinary action tried to court, only question on appeal is whether pleadings sustain judgment.

4. Judgment—In Action for Trespass by Mining Coal from Beneath Land Claimed by Plaintiff, Judgment Dismissing Petition Held Proper Under Pleadings.—Under petition alleging ownership of land and defendant's trespass by mining coal thereunder, and answer denying plaintiff's ownership and alleging ownership in defendant, and that plaintiff was estopped to maintain action, judgment dismissing petition held proper.

5. Adverse Possession.—Occupancy by plaintiff, of land in controversy, at will or by sufferance, with father's possible unexpressed intent to eventually give it to him, held not adverse.

6. Estoppel—Plaintiff's Active Participation in Sale of Coal Under Father's Land Held to Preclude Subsequent Claim for Damages for Removal of Coal.—Plaintiff's active negotiations for sale of coal under father's land, in which he was given part of consideration, held to preclude claim for damages for removal of coal from beneath land occupied by him, which was part of father's land at time of sale.

STRATTON & STEPHENSON for appellant.

MOORE & CHILDERS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE THOMAS— Affirming.

There appears to be less merit in this appeal than in any one brought to the attention of the writer throughout

his service as a member of this court.  The appellant and plaintiff below, Noah Chapman, filed this ordinary action in the Pike circuit court against the appellee and defendant below, Majestic Collieries Company, and alleged in his petition that he was the owner of a tract of described land in Pike county containing about 50 acres; that defendant had wrongfully trespassed upon it by mining coal therefrom to plaintiff's damage in the sum of $2,500.00 and for which amount he prayed judgment.  The answer denied plaintiff's alleged ownership of any part of the land and likewise denied other material averments of the petition.  It also asserted ownership of the coal under the land in defendant, and in another paragraph pleaded that plaintiff by his conduct, which was set out in full, estopped himself from maintaining the action or claiming ownership in the coal as against defendant.  Appropriate pleadings made the issues, and upon trial by the court without the intervention of a jury the petition was dismissed, to reverse which plaintiff prosecutes this appeal.

In the first place no equitable issues were presented by any pleading filed by either party, and the action remained an ordinary one throughout.  No motion was made to transfer it to equity, nor did the court do so on its own motion.  Under such circumstances there should have been a separation of law and facts, but which was neither done nor requested to be done.  If, however, that practice had been followed plaintiff, in order to obtain a review of the judgment, was required to make a motion for a new trial in order to present the errors of which he complains, but which likewise was not done.  Albin v. Ellinger, 103 Ky. 249; Cincinnati, etc., R. R. Co. v. Hansford, 125 Ky. 37; Broadway and Newport Bridge Company v. Commonwealth, 173 Ky. 165; Prudential Insurance Co. v. Orr, 174 Ky. 831, and National Council Daughters of America v. Polsgrove, 192 Ky. 495.  In the absence of such steps the only question presented is, whether the pleadings sustain the judgment, as has consistently been announced by this court.  That they do in this case is not and can not be questioned, and for that reason alone the judgment can not be disturbed.

If, however, such obstacles did not exist and we were authorized to consider the merits of the case, the result would be the same.  Plaintiff made no pretense toward establishing a record title to the tract of land in controversy, but, on the contrary, stated that about 1899 he

moved on it, not even knowing to whom it belonged, if anyone, and that he settled thereon and marked an outside boundary by boring holes in corner and line trees. He admitted that there was cleared land upon the tract at the time, and it is not clear that he ever added to it since his alleged occupancy, which latter he testified was continuous and under claim of ownership and he thereby sought to establish his title by adverse possession. Upon cross-examination, however, it was completely developed that the 50 acre tract in controversy was composed partly of 83 acres owned by his mother and partly of 200 acres owned by his father, all of which was contiguous and composed the entire tract of 283 acres upon which plaintiff's parents resided and reared their family of five or six children, one of whom was plaintiff, and that the latter, upon his marriage about 1899, with the consent and acquiescence of his parents, moved upon and thereafter resided on the 50 acres in dispute; but it was expressly disclaimed by plaintiff that he did so under any contract of purchase from his parents or anyone else, by parol or otherwise It is, therefore, seen that under his theory of the case he found a 50 acre tract of unclaimed land and proceeded to and did settle upon it, but which on cross-examination was indisputably shown by him to be untrue. In his cross-examination he also testified that he never listed any portion of the tract for taxation, but that it was done by and in the name of his father, who likewise paid the taxes, but he does say that on occasions he reimbursed his father for the taxes so paid. It is perfectly clear to the discerning mind that plaintiff's occupancy was only at will or by sufferance, with, possibly, the intent on the part of his father to eventually give it to him, but which was never so expressed, understood or attempted to be executed, and under such circumstances plaintiff's occupancy was not adverse.

In addition, however, and which itself is conclusive against plaintiff, he actively participated in 1915 in negotiations for the sale of the coal under all of his father's land (less a small tract which the latter had theretofore conveyed to one of his daughters), which included the tract in controversy. Such negotiations culminated in the sale of the coal to defendant by deed duly executed and acknowledged by plaintiff's parents when he was present and he witnessed the signature of his mother to the deed which she made by her mark. Not only so, but

the father received $12,000.00 cash as consideration for the coal sold by that deed (including, as we have said, the coal under the tract in controversy), and he immediately thereafter gave to plaintiff and several of his other children $1,600.00 each of that consideration, and during all of that time plaintiff made no objection to the execution of the deed whereby defendant bought the coal under the tract of land he is now claiming. Surely, if it is possible to create an estoppel *in pais* the recited facts were sufficient to do so. However, in the recent case of Oliver v. Creech, 215 Ky. 660, we had before us facts somewhat similar to those here presented, but less conclusive of the estoppel. We, however, held that the son in that case who asserted title under the analogous facts therein shown was estopped by his conduct to do so, and which conduct, we repeat, was not so conclusive of the estoppel as is herein presented against plaintiff. That case is conclusive of this one, and if we were permitted to determine the case on its merits there would be no escape from the conclusion that the court did not err in dismissing the petition.

Wherefore, the judgment is affirmed.